## United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | **CASE NO.** | 08-B-71909 |
|---|---|---|---|
| **DATE** | November 17, 2011 | **ADVERSARY NO.** | 10-A-96039 |
| **CASE TITLE** | Julie Harnden, Debtor<br><br>Julie Harnden, Plaintiff<br>v.<br><br>United States of America, Internal Revenue Service, Defendant. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, judgment is entered in favor of the Defendant.

■[ For further details see text below.]

### Memorandum Opinion

The parties have stipulated to all relevant facts, leaving only a single question of law: whether a taxpayer's response to the IRS's report of changes to her income tax after examination and notice of deficiency in which the taxpayer signed that she gave her "consent to the immediate assessment and collection of any increase in tax and penalties" itself constituted an "assessment" of taxes for purposes of the Bankruptcy Code. If it did, then the taxes were assessed more than 240 days before the petition date and are dischargeable. If the assessment only occurred later, when the IRS account transcript shows the assessment was entered, the taxes are not dischargeable. I find that the assessment took place on the later date and therefore the taxes are not dischargeable.

**Factual Background**

On April 11, 2005, the Debtor filed a personal income tax return for the period ending December 31, 2003, claiming a tax liability of $1,201 minus an earned income credit of $2,547, meaning the Debtor was entitled to a refund of $1,346. On or about July 21, 2006, the Debtor received a Form 4549 (Income Tax Examination Changes) from the IRS, indicating that the IRS believed after investigation that her corrected tax liability should have been $27,220 and that the Debtor was not entitled to an earned income credit. The Form 4549 therefore indicated that the Debtor owed $28,566 in taxes together with the disgorgement of the refund, as well as $12,518.20 in penalties through July 21, 2006 and $6,123.77 in interest through August 20, 2006. The letter attached to the form explained the Debtor's right to either contest the changes or to agree to the assessment of the additional tax. The Debtor chose the latter, and signed the box at the end of the Form 4549, by which she stated that, "I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law. It is understood that this report is subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations." The Debtor signed the form as of August 1, 2006. However, the IRS Account Transcript demonstrates that the additional tax, penalties and interest were not assessed until February 11, 2008, on which date the IRS assessed $10,129 as additional tax, $5,186.80 in interest and $2,535.20 in penalties.[1]

The Debtor filed for protection under Chapter 7 of the Bankruptcy Code on June 17, 2008. The Debtor scheduled $19,847.42 in 2003 taxes as a priority claim to the IRS. The trustee filed a no-asset report and the Debtor received a discharge on October 15, 2008. On April 9, 2010, the Debtor filed this adversary proceeding, seeking a determination that the 2003 tax debt was dischargeable and was discharged. The IRS filed a motion to dismiss, which the Court and the parties agreed to treat as a request for a stipulated trial upon submission of a joint stipulation of facts.

**Discussion**

11 U.S.C. §523(a)(1) makes non-dischargeable any debt for a tax "of the kind and for the periods specified in section 507(a)(3) or 507(a)(8)." Section 507(a)(8)(A) includes income taxes, but only to the extent that within the corresponding enumerated period the taxes (i) required the filing of a tax return, (ii) were assessed, or (iii) were assessable. The only period at issue in this case is the second: if the tax was "assessed within 240 days before the date of the filing of the petition, exclusive of-- (I) any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and (II) any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days." 11 U.S.C. § 507(a)(8)(A)(ii).

I find that neither the notice the IRS sent nor the Debtor's signature and return of the tax examination changes form constituted an "assessment" of the additional tax. While the consent form stated that the Debtor gave her "consent to the immediate assessment and collection of any increase in tax," nothing in the form or attached letter indicated that the tax would automatically be assessed if returned. Instead, the consent form clearly stated that "it is understood that this report is subject to acceptance by the Area Director" or other relevant person at the IRS.

---

[1] Neither party provided any explanation for why the amounts ultimately assessed were less than the amounts in the deficiency notice.

The Bankruptcy Code does not specifically define the term "assessment." Instead, courts look to the relevant tax law for the definition. See, e.g., In re Bernicky, No. 94-61788, Adv. No 95-6161, 1996 WL 512328 (Bankr. N.D. Ind. June 18, 1996) ("Even though the term may appear in the Bankruptcy Code, it is specially used in reference to taxes and its meaning must be a function of that context. Recognizing the difficulty of defining 'assessment' so as to encompass all possible tax procedures of federal, state, and local governmental units, Congress employed a common term of tax lexicon and left its peculiar meaning to depend upon the particular tax procedures.") (quoting In re Hartman, 110 B.R. 951, 965 (D. Kan. 1990)). For purposes of federal income tax, "assessment" is an "administrative determination that a certain amount is currently due and owing as a tax with consequences somewhat similar to the reduction of a claim to judgment." U.S. v Latham, 754 F.2d 747, 750 (7th Cir. 1985). The Seventh Circuit Court of Appeals has explained the process as follows:

> The IRS is authorized to make various types of assessments (26 U.S.C. § 6201), and among the most common are summary assessments and deficiency assessments. The tax owed by an individual taxpayer in accordance with his personal income tax return is technically "assessed" under section 6201(a)(1). A deficiency assessment, by contrast, generally results from a finding that a tax return understates the taxpayer's liability or that the taxpayer failed to file a return. The deficiency is the tax imposed by the IRS, less the tax determined by the taxpayer to be owed on his return. 26 U.S.C. § 6211(a); Laing v. United States, 423 U.S. 161, 96 S. Ct. 473, 46 L.Ed.2d 416 (1976). Unlike a summary assessment, a deficiency assessment requires the IRS to follow a number of statutory steps before it may undertake to collect the deficiency. For instance, the IRS must send the taxpayer a notice of deficiency (26 U.S.C. § 6212(a)) and then refrain from further action for ninety days, during which time the taxpayer is authorized to file a petition for a redetermination in the Tax Court. 26 U.S.C. § 6213(a).

Murray v. Comm'r, 24 F.3d 901, 902-03 (7th Cir. 1994).

The assessment of federal income tax is "made by recording the liability of the taxpayer in the office of the Secretary [of the Treasury] in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C § 6203. Those regulations delegate authority to "assessment officers" and state that the "assessment shall be made by an assessment officer signing the summary record of assessment.... The date of the assessment is the date the summary record is signed by an assessment officer." 26 C.F.R. §301.6203-1. Although the parties only submitted a printout of an IRS account transcript to establish that the supplemental tax was assessed on February 11, 2008, rather than a copy of an actual summary record signed by an assessment officer, the Debtor has not contested the factual accuracy of the transcript.[2] That is to say, the Debtor does not argue that a duly authorized assessment officer did not sign a summary record on that date. She only argues that the supplemental tax had already previously been assessed either by the IRS's examination and conclusion that the Debtor owed more taxes, by the transmittal of the Form 4549, or by the Debtor's signature and return of that form. However, this argument has been rejected by the large majority of courts. Thus, while Judge Fines of the Central District issued an opinion finding that a debtor's failure to respond to a Notice of Proposed Changes constituted an assessment because the debtor "no longer had any right to appeal the proposed changes ... such that his tax liability [was] liquidated and defined," In re Schweizer, 1996 WL 33404955 (Bankr. C.D. Ill. Feb. 28, 1996), that decision was reversed on appeal. The District Court held that under the statute only the signature of the

---

[2] Case law suggests that an account transcript "is certainly sufficient to support an inference that the described administrative act was performed on the date indicated. This proffer shifted a burden of production over to the Debtor." In re De Jesus, 268 B.R. 185, 194 (Bankr. D. Minn. 2001). See also, e.g., Hawks v. Comm'r, 2003 WL 21774132 (9th Cir. July 30, 2003) ("general objection to the accuracy of the Internal Revenue Service's ('IRS') computerized data does not constitute evidence sufficient for a reasonable trier of fact to conclude that [plaintiff] rebutted the presumption of correctness granted the IRS's official records"); U.S. v. Thurner, (7th Cir. Oct. 17, 2001) (IRS transcripts of account offered to establish the amounts of the assessments subject to collection were *prima facie* evidence of the liabilities).

summary record by the assessing officer constituted assessment, and that while such interpretation was "a formalistic approach," it was "required by the regulations." U.S. v. Schweizer, Nos. 95-90940, 95-9051, 1996 WL 577015 (C.D. Ill. July 31, 1996). It is true that in Schweizer the debtor had only tacitly consented to the supplemental assessment rather than actively responding and providing express consent as the Debtor did here. It is also true that there is some dicta in the District Court's opinion to suggest that difference might be relevant. U.S. v. Schweizer, 1996 WL 577015 ("Since the debtor did not consent, but merely failed to respond, no formal assessment occurred."). However, there is nothing in the statutory language or in the reasoning of the rest of the opinion to suggest why that fact would change the result. See, e.g., In re Bernicky, No. 94-61788, Adv. No. 95-6161, 1996 WL 512328 (Bankr. N.D. Ind. June 18, 1996) (citing numerous cases for the proposition that only the formal act of signing the summary record constitutes an 'assessment' under the statute, and while "ostensibly 'technical,'" the definition "provides a readily determinable date of assessment"). Rather, the district court was only highlighting an additional factual reason supporting its decision even if it were assumed *arguendo* that the debtor's legal argument was correct.

Moreover, as noted above, the language in the form signed by the Debtor in this case was clear that assessment required the further acceptance of an officer at the IRS. It was drafted this way because the regulations are clear that an assessment officer must sign a summary record in order to make an assessment and because the Tax Code includes restrictions on how the IRS can make deficiency assessments. 26 U.S.C. § 6213(a) generally provides that no assessment of a deficiency shall be imposed until 90 days after notice of the deficiency is provided to the taxpayer. Therefore, the notice of deficiency could not have constituted an assessment, nor could the assessment have occurred before the notice was sent. The consent language in the form is included because of another provision in the same section. 26 U.S.C. § 6213(d) provides that the "taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary, to waive the restrictions provided in subsection (a) on the assessment." This is the purpose of the block that the Debtor signed and returned to the IRS by which she "consented to immediate assessment." Therefore, it is clear from the regulations and the language in the form that the consent that the Debtor signed did not mean that the tax was in fact immediately assessed but only that she waived her right to the 90-day restriction period.

The Debtor argues that the IRS had no good reason to wait until 2008 to make a formal assessment when the Debtor had given her consent to the supplemental assessment in 2006, and that it would essentially gut the temporal limitations in Section 507(a)(8) if the IRS could make subsequent assessments whenever it wanted. However, it is not true that the IRS can delay assessment indefinitely. Under 26 U.S.C. § 6501, so long as there was no intentional or willful attempt to evade a tax, the IRS cannot make a supplemental assessment with respect to a tax period more than 3 years after a tax return for that period was filed. The February 2008 supplemental assessment in this case was made within 3 years after the tax return was filed in April 2005 and therefore was timely. Moreover, a deficiency will only occur if the tax return understates the tax owed, 26 U.S.C. § 6211(a), and a supplemental assessment may only be made if it is ascertained that the original assessment "is imperfect or incomplete in any material respect." 26 U.S.C. § 6204. Therefore, a taxpayer can avoid the impact of supplemental assessments by simply timely filing correct returns. Additionally, the IRS has offered explanation for the delay in making the assessment: the Debtor filed 3 bankruptcy cases during 2006 and 2007 which were dismissed without discharge. She filed a Chapter 13 case on September 8, 2006, which was dismissed on November 17, 2006, another Chapter 13 case on December 15, 2006, which was dismissed on February 23, 2007, and a third Chapter 13 case on April 10, 2007, which was dismissed on August 24, 2007. The Debtor argues that there was no automatic stay in effect in the third bankruptcy and that there were gaps between the cases in which the IRS could have made the assessment. Those might be valid arguments if the IRS were relying on the provisions in 507(a)(8)(A) or elsewhere in the Bankruptcy Code that toll limitations

periods while a stay is in effect.[3] But, that is not what the IRS is arguing. The assessment was timely under the Tax Code even without any tolling. Instead, the existence of the three cases offers a rational explanation for the delay in making the assessment. The filing of the cases no doubt disrupted the IRS's review process of the Debtor's file. Even once the cases were dismissed, the IRS may have waited for a time to see if the dismissal was appealed. Also, it is not reasonable to expect the IRS to have constantly monitored the Debtor's case and to have made the assessment the instant it received notice of dismissal.

### Conclusion

Therefore, the Court finds that the Debtor has failed to establish that any debt owed to the IRS is dischargeable. The Debtor rested her entire case on the argument that the tax in question was assessed outside of the period set forth in Section 507(a)(8)(A)(ii), and made no argument and provided no evidence that any part of the debt was dischargeable for any other reason. Because the Court finds that the tax at issue was assessed within 240 days of the petition date, judgment will be entered in favor of the Defendant.

The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

November 17, 2011

Judge Manuel Barbosa

---

[3] For example, 26 U.S.C. § 6501(h) provides that the 3 year period for making an assessment is "suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and— (1) for assessment, 60 days thereafter."

## CERTIFICATE OF MAILING

The undersigned hereby certifies that the attached Memorandum Opinion has been served via First Class Mail on November 17, 2011.

**Thomas E. Laughlin**
Attorney Thomas E. Laughlin
6833 Stalter Dr.
Rockford, IL 61108

**William C Elwell**
U S Department of Justice
Civil Trial Section Tax Division
555 4th Street NW Room 7325
Washington, DC 20001

_Kimberly Conrad_
Kimberly Conrad, Judicial Assistant